IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CHARCO A. HAWKINS, AIS 180465 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:19-CV-315-ECM-KFP |
| | ) | |
| DE' ANGELO JONES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Pro se Plaintiff Charco A. Hawkins, an inmate at the Elmore Correctional Facility, filed this 42 U.S.C. § 1983 alleging violations of his federally protected rights while incarcerated in the Staton Correctional Facility. Doc. 1. He has sued Warden John Crow, Captain Otis Smith, Lieutenant Justin Totty, and Officer De'Angelo Jones for their alleged use of excessive force against him in April 2019. For relief, Plaintiff seeks monetary damages and release from confinement.

Pursuant to the Court's orders, Defendants filed an Answer (Doc. 26) and Special Report with supporting evidentiary materials (Doc. 27) addressing Plaintiff's claims. The Court informed Plaintiff that Defendants' Special Report may, at any time, be treated as a motion for summary judgment, and the Court explained to Plaintiff the proper manner to respond to a motion for summary judgment. *See* Doc. 28. Plaintiff filed his Response to the Defendants' Special Report and Motion for Summary Judgment (Doc. 34), and this case is now pending on Defendants' Motion for Summary Judgment. Doc. 27. Upon

consideration of the motion, supporting evidentiary materials, and Plaintiff's opposition, the Court concludes that the motion is due to be GRANTED in part and DENIED in part.

## I. LEGAL STANDARD

To survive a properly supported motion for summary judgment, a plaintiff must produce some evidence supporting his constitutional claims. *See Celotex v. Catrett*, 477 U.S. 317, 322 (1986). He must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556–57 (11th Cir. 1984). Consequently, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case on which he will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex Corp.*, 477 U.S. at 322; *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607 (11th Cir. 1987). Where all the evidentiary materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, the entry of summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

Although factual inferences must be viewed in a light most favorable to the non-moving party and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). "The leniency the Court must apply does not mean the normal summary judgment standard is discarded; nor can the Court accept

factual averments completely unsupported by the record." *Jones v. Wal-Mart Assocs., Inc.*, No. 1:19-CV-03705-SDG, 2021 WL 243285, at *2 (N.D. Ga. Jan. 25, 2021) (citing *Nawab v. Unifund CCR Partners*, 553 F. App'x 856, 860 (11th Cir. 2013) ("Although a *pro se* complaint is entitled to a less strict interpretation, a *pro se* plaintiff is not excused from meeting the essential burden of establishing that there is a genuine issue as to a fact material to his case. When a nonmoving party's response consists of nothing more than conclusory allegations, summary judgment is not only proper but required.") (citations and punctuation omitted in original); *Nalls v. Coleman Low Fed. Inst.*, 307 F. App'x 296, 298 (11th Cir. 2009) ("[A] *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment.")

In this case, while Plaintiff has not established that there is a genuine issue as to a material fact to preclude summary judgment on his claims against Defendants Crow and Smith, Plaintiff has established that there is a genuine issue as to a material fact to preclude summary judgment on his claims of excessive force against Defendants Totty and Jones.

## II.   FACTUAL BACKGROUND

Plaintiff's claims stem from the following facts, viewed in the light most favorable to Plaintiff:

In his Complaint, Plaintiff asserts that on April 9, 2019, "while exiting the inmate cafeteria (chow hall) at approx. 4:30 pm [he] was attacked and physically assaulted (Badly beaten) by 2 security personnell [sic] – [Defendants Jones and Totty]. I had a cinnamon roll on my person because I was only given 2-3 min[utes] to eat, they stopped me and

3

severly [sic] assaulted me. . . ." Doc. 1 at 3. Plaintiff maintains that he did not threaten or disobey either officer's directives and alleges he "suffered severe head injuries (I still have post concussion symptoms), back and neck injuries, [and] kidney injuries (blood in urine for several days), etc. . . ." *Id*. In his response to Defendants' Special Report, Plaintiff further alleges that Defendant Jones "pushed [him] down, took his cinnamon roll[,] and began beating him. [Defendant Totty] arrived at the cafeteria and kicked [Plaintiff] in his lower abdominal area." Doc. 34 at 2. Plaintiff asserts that he was assaulted both before and after being handcuffed and that the kick to his abdomen resulted in Plaintiff urinating blood. *Id*. He further alleges that, after the assault, Defendant Smith threatened him, that he was held in lock-up without proper cause, and that he was later transferred to the Elmore Correctional Facility. Doc. 1 at 3.

On May 6, 2019, Defendant Totty submitted an incident report detailing the incident:

> On April 9, 2019, [Defendant Jones] was assigned as the Kitchen Rover at Staton Correctional Facility. During the dinner meal, [Defendant Jones] was assigned to the exit door in the chow hall. [Defendant Jones] observed [Plaintiff] with contraband in his pants. [Defendant Jones] ordered [Plaintiff] to take the food from his pants. [Defendant Jones] reached for the food in [Plaintiff's] pants and removed it. [Plaintiff] punched [Defendant Jones] in the mouth with a closed fist. [Defendant Jones] conducted a two-on-one takedown as per Vanguard SSGT on [Plaintiff]. [Plaintiff] fell on [Defendant Jones's] left hand as they went to the ground. At approximately 4:16 p.m., [Defendant Totty], observing the incident, reported to the scene. [Defendant Totty] handcuffed [Plaintiff] to the rear. At approximately 4:30 p.m., [Defendant Totty] escorted [Plaintiff] to the Health Care Unit for a medical assessment conducted by Nurse Guillaume Anthony (see attached). [Defendant Totty] took several pictures for evidence purposes (see attached). [Plaintiff] submitted a written statement (see attached). Upon completion of the medical assessment, [Plaintiff] was secured in Temporary Holding Cell G1-19A. At approximately 5:15 p.m., [Defendant Jones] reported to the

> Health Care Unit for a medical assessment conducted by Nurse Anthony. An Employers First Report of Injury or Occupational Disease packet was completed for [Defendant Jones]. [Defendant Jones] departed Station enroute to the Primary Care Physician (Gatekeeper). [Plaintiff] will receive disciplinary action for Assault on an ADOC Official. No further action was taken at this time.

Doc. 27-5 at 1. According to an April 9 body chart, Defendant Jones suffered a possible fracture to his left hand as a result of the incident with Plaintiff, but no other injuries were noted. Doc. 27-8 at 1. According to Plaintiff's body chart, Plaintiff asserted that he "was hit for a cinnamon roll" and kicked. *Id*. He had no bruises or cuts and his gait was steady. *Id*. A suicide and self-risk assessment form completed on April 9 indicates that Plaintiff told Wexford medical personnel, "I feel hopeless and things are out of my control when officers use there [sic] power." Doc. 27-11 at 45.

Plaintiff had another medical examination the following day. Doc. 27-9 at 1. According to the body chart, Plaintiff stated that he was urinating blood and appeared to have an unsteady gait. *Id*. On April 10, Staton medical personnel recommended that Plaintiff be taken to Jackson Hospital for treatment. Doc. 27-5 at 2. According to the ADOC incident report completed on April 14:

> On April 10, 2019, at approximately 6:01 pm, Wexford Nurse Tara Parker informed Correctional Officer Anthony Barber [that Plaintiff] would need to be transported to Jackson Hospital in Montgomery Alabama for medical treatment. At approximately 6:02 PM, Officer Barber notified Correctional Sergeant Lorenzo Mills of the incident. Sgt. Mills notified Correctional Captain Ronzella Howard of the incident. At approximately 6:20 PM, Correctional Officers Markies Murray and Markeal Burns departed Staton with [Plaintiff] enroute to Jackson Hospital. At approximately 11:45 pm, Officer's [sic] Burns and Murray returned from Jackson Hospital with [Plaintiff]. [Plaintiff] remains Housed in Staton MOU. Nothing further at this time.

5

*Id*. Also on April 10, Wexford medical personnel noted that Plaintiff had blood in his urine from an April 9 "inmate assault" and that Plaintiff suffered "flank pain." Doc. 27-11 at 7. Plaintiff told Jackson Hospital medical personnel that he was assaulted, struck in the head, neck, and lower back, and urinated blood after the assault. *Id*. at 14. His Jackson Hospital medical records note "no evidence of trauma" to his head (*id*. at 17), and CT scans of his head, C-spine, chest, abdomen, and pelvis reflected no fractures, visceral injury, or hemorrhages. *Id*. at 23-25. Jackson Hospital medical personnel noted that the "primary clinical impression" of Plaintiff included: (1) acute closed head injury, (2) cervical strain; (3) chest and abdominal wall contusions; and (4) urinary tract infection. *Id*. at 26–27. When Plaintiff returned from Jackson Hospital the evening of April 10, he had a dressing to his left "AC," was prescribed medication, and was diagnosed with a urinary tract infection. *Id*. at 3.

Approximately one month after the use of force and after investigating the April 9 incident, Correctional Captain Demetrius Holstick submitted the following findings and recommendations:

> [Defendant Jones] stated that he was standing at the Chow Hall exit door searching inmates as they exit the Chow Hall. [Defendant Jones] stated that he observed [Plaintiff] with contraband concealed in his pants. [Defendant Jones] stated that he ordered [Plaintiff] to take the food from his pants. [Defendant Jones] stated that he reached for the food and removed it from [Plaintiff's] pants. [Plaintiff] then punched him in the mouth. [Defendant Jones] stated that he then conducted a two-on-one takedown on [Plaintiff]. [Defendant Jones] stated that [Plaintiff] landed on his left hand injuring it. [Defendant Jones] stated that [Defendant Totty] arrived to the scene to assist and handcuffed [Plaintiff].
>
> [Plaintiff] stated that he was exiting the Chow Hall when [Defendant Jones] caught him trying to take a cinnamon roll out of the Chow Hall. [Plaintiff]

6

> stated that he told [Defendant Jones] that it ain't nothing but a cinnamon roll. [Plaintiff] stated that [Defendant Jones] then picked him up and threw him to the floor. [Plaintiff] stated that he didn't say anything out the way towards [Defendant Jones] and he didn't try and fight [Defendant Jones] or nothing. [Plaintiff] stated that he did not resist at all.
>
> [Defendant Totty] stated that he observed [Plaintiff] punch [Defendant Jones] in the mouth and rushed to the area. [Defendant Jones] had conducted a two-on-one takedown on [Plaintiff]. [Defendant Totty] stated that he handcuffed [Plaintiff] with no further incident.
>
> . . . .
>
> It is the belief of Captain Holstick that the amount of force used by [Defendant Jones] was justified. [Defendant Jones] received a busted lip from where he was punched, but [Plaintiff] alleged that he did not hit [Defendant Jones] or try and fight. [Defendant Totty] stated that he witnessed [Plaintiff] punch [Defendant Jones]. Recommend disciplinary action be initiated.

Doc. 27-3 at 1.

## III. DISCUSSION

In their Answer and Special Report, Defendants contend that Plaintiff's allegations fail to state a claim, and, in any event, they are entitled to immunity in their individual and official capacities. Docs. 26, 27. They also assert, to the extent Plaintiff seeks to hold Defendants Crow and Smith liable based on their status as supervisors, his claims fail as there is no respondeat superior liability.

### A. Defendants Crow and Smith

Insofar as Plaintiff seeks relief against either Defendant Smith or Defendant Crow, Plaintiff's allegations fail to state a claim upon which relief may be granted. "Section 1983 requires proof of a causal link between a particular defendant's acts and the alleged constitutional deprivation." *Averhart v. Warden*, 590 F. App'x 873, 874 (11th Cir. 2014)

7

(citing *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993)). Plaintiff's Complaint fails to assert any allegations at all against Defendant Crow, and Plaintiff's one allegation that Defendant Smith "threatened" him is not only threadbare and conclusory but also fails to assert any constitutional deprivation. While pro se litigants are held to a less stringent standard than parties represented by counsel (*see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)), Plaintiff's claims against Defendants Crow and Smith lack any foundation and are subject to dismissal.

Further, to the extent Plaintiff seeks to hold these Defendants liable based upon their supervisory positions, § 1983 claims "may not be brought against supervisory officials solely on the basis of vicarious liability or *respondeat superior.*" *Averhart*, 590 F. App'x at 874 (citing *Keating v. City of Miami,* 598 F.3d 753, 762 (11th Cir. 2010)) "A supervisor can be held liable under § 1983 if he personally participates in the alleged constitutional violation or if a causal connection exists between his acts and the constitutional infirmity." *Id*. (citing *Keating*, 598 F.3d at 762).

In summary, because (1) Plaintiff's claims against Defendants Crow and Smith do not establish their personal participation or a causal connection between their actions and the alleged violation and (2) respondeat superior does not apply in § 1983 actions, Defendants Crow and Smith are entitled to summary judgment on Plaintiff's claims against them.

### B. Defendants Jones and Totty

#### 1. Sovereign Immunity for Official Capacity Claims

Next, to the extent Plaintiff sues Defendants Jones and Totty in their official capacities, they are entitled to absolute immunity from monetary damages. Official capacity lawsuits are "in all respects other than name . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, [465 U.S. 89, 100] (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59] (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, [916 F.2d 1521, 1525 (11th Cir. 1990)], and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe Cnty., Ala.*, 116 F.3d 1419, 1429 (11th Cir. 1997). Accordingly, because Defendants Jones and Totty were indisputably state actors at the time of the alleged excessive force, they are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Id.*; *Jackson v. Georgia Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994).

#### 2. Qualified Immunity for Individual Capacity Claims

Defendants Jones and Totty also argue that they are also entitled to qualified immunity from damages in their individual capacities. Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities

9

if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Qualified immunity is not merely a defense against liability but immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (quotation marks and citation omitted). To receive qualified immunity, the public official must first prove he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Based upon the record, there is no dispute that Defendants Jones and Totty were acting within the course and scope of their discretionary authority when the alleged conduct occurred. Therefore, Plaintiff must allege facts that, when read in a light most favorable to him, show Defendants Jones and Totty are not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To satisfy his burden, Plaintiff must show two things: (1) a defendant committed a constitutional violation and (2) the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. . . . In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citations and quotation marks omitted) (alteration in original). "Clearly established law" means (1) "a materially similar case has already been

10

decided," (2) "a broader, clearly established principle that should control the novel facts of the situation," or (3) "the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." *Gaines v. Wardynski*, 871 F.3d 1203, 1208–09 (11th Cir. 2017) (citations omitted).

The controlling authority is from "the Supreme Court of the United States, the Eleventh Circuit, or the highest court in the relevant state." *Id.* at 1209. "Qualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments,'" and it "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quoting *Malley v. Briggs*, 475 U.S. 335, 342 (1986)). The Eleventh Circuit "has stated many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Gaines*, 871 F.3d at 1210 (citations and quotation marks omitted). "Exact factual identity with a previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citation omitted). If a plaintiff cannot establish both elements to satisfy his burden, the defendants are entitled to qualified immunity, and the court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (*citing Pearson*, 555 U.S. at 241–42).

If the alleged constitutional violation is an excessive force claim, the excessive force "must have been sadistically and maliciously applied for the very purpose of causing harm," and it is "clearly established that all infliction of excessive force on a prisoner

11

sadistically and maliciously for the very purpose of causing harm and which does cause harm violates the Cruel and Unusual Punishment Clause." *Johnson v. Breeden*, 280 F.3d 1308, 1321–22 (11th Cir. 2002), *overruled on other grounds by Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010). Therefore, "where this type of constitutional violation is established there is no room for qualified immunity. It is not just that this constitutional tort involves a subjective element, it is that the subjective element required to establish it is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution. . . ." *Id; Bowden v. Stokely*, 576 Fed. App'x 951, 954–955 (11th Cir. 2014) Accordingly, while "there is no per se rule barring qualified immunity in Eighth Amendment cases, where the plaintiff has sufficiently alleged or shown a material dispute of fact as to an excessive force claim, summary judgment based on qualified immunity is not appropriate." *Id*. at 955 (citing *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002)). Accordingly, the Court will consider whether Plaintiff's allegations against Defendants Jones and Totty, which the Court must take as true for purposes of summary judgment, set forth a violation of his Eighth Amendment rights.

The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id*. at 8 (internal quotations omitted). The objective component requires that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Id*. (citation omitted). Whether force was applied maliciously and sadistically

12

to cause harm requires analysis of several factors, including: "a) the need for the application of force; b) the relationship between the need and the amount of force that was used; c) the extent of the injury inflicted upon the prisoner; d) the extent of the threat to the safety of staff and inmates; and e) any efforts made to temper the severity of a forceful response." *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009).

In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Hudson*, 503 U.S. at 4. While a lack of serious injury is relevant to the inquiry, "[i]njury and force . . . are only imperfectly correlated and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins,* 559 U.S. at 38. However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a sort 'repugnant to the conscience of mankind.'" *Id.* at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). See *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000) ("[T]he application of *de minimis* force, without more, will not support a claim for excessive force...."); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) ("The management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force."); *Harris v.*

13

*Chapman*, 97 F.3d 499, 505 (11th Cir. 1996) (holding application of *de minimis* force, without more, presents no claim cognizable under the Eighth Amendment).

"Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990). Generally, correctional officers are authorized to use force when a prisoner fails to comply with an order. "Officers are not required to convince every prisoner that their orders are reasonable and well-thought out before resorting to force." *Pearson v. Taylor*, 665 F. App'x 858, 864 (11th Cir. 2016) (citation omitted). Therefore, the core inquiry is whether force was applied in a good-faith effort to maintain or restore discipline or "maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 37 (citation omitted).

As the moving parties, Defendants Jones and Totty bear the initial burden on summary judgment of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. To support their motion for summary judgment, Defendants Jones and Totty submitted affidavits, prison incident reports, body charts, and Plaintiff's medical records. Based on these submissions, the Court above set out the facts that are undisputed or, if disputed, are taken in a light most favorable to Plaintiff. In his personal affidavit, Defendants Jones testified as follows:

> I[,] Officer De'Angelo Jones, observed [Plaintiff] attempting to walk out of the chow hall with food inside of his pants. I gave him a direct order to remove the food from his pants. He refused, so I removed the food from his pants. As I was removing the food, [Plaintiff] struck me in the mouth with a closed fist. I performed a two-on-one takedown on [Plaintiff], while going to the ground the inmate landed on my hand. I did not assault [Plaintiff] at

any time. [Defendant Totty] came and assisted me by putting restraints on [Plaintiff].

Doc. 27-6 at 1-2. In his personal affidavit, Defendant Totty further testified:

> On April 9, 2019, I[,] Correctional Lieutenant Justin Totty, was assisting with feeding dinner at Staton Correctional Facility. At approximately 4:15 p.m., I observed [Defendant Jones] asking [Plaintiff] to remove the food he had in his pants. [Defendant Jones] removed the food from [Plaintiff's] pants. [Plaintiff] immediately punched [Defendant Jones] in the face. [Defendant Jones] conducted a two-on-one takedown on [Plaintiff]. [Plaintiff] fell to the ground landing on [Defendant Jones'] left hand. I, Lieutenant Totty, then reported to the scene and handcuffed [Plaintiff] to the rear. I then escorted [Plaintiff] to the Health Care Unit where he was medically assessed by Nurse Guillaume Anthony.

Doc. 27-7 at 1-2. Thus, Defendants Jones and Totty clearly dispute Plaintiff's version of events; however, at this stage the Court is required to view the facts in the light most favorable to Plaintiff and draw all reasonable inferences from those facts in his favor. *Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606, 608 (11th Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (stating that all justifiable inferences are to be drawn in favor of party opposing summary judgment).

In this vein, Plaintiff states that Defendant Jones assaulted and beat him for having a cinnamon roll and that, while handcuffed, Defendant Totty kicked him in his abdomen. Plaintiff maintains that he did not threaten or disobey Defendant Jones or Totty and that, the day after the assault, Plaintiff was sent to Jackson Hospital to treat Plaintiff for blood in his urine. *See* Doc. 34 at 2. Defendant Jones denies that his use of force was excessive and maintains that force was used to restore order after Plaintiff punched him. And while Defendant Totty corroborates Defendant Jones's statement that Plaintiff punched him, Defendant Jones's body chart fails to show any injury to his face. *See* Doc. 27-8 at 1.

15

Further, Plaintiff's own body charts from April 9 and April 10 fail to make note of any hand injury, redness, or swelling to indicate Plaintiff punched Defendant Jones. Docs 27-2 at 1, 27-9 at 1.

Viewing these facts in a light most favorable to Plaintiff, the Court concludes that Defendants Jones and Totty are not entitled to qualified immunity, as Plaintiff has alleged facts sufficient to survive summary judgment on his excessive force claim. *Skrtich*, 280 F.3d at 1301. Disputed issues of material fact exist regarding the need for the use of force by Defendants Jones and Totty, the nature of the force used, and whether they acted "maliciously and sadistically" to cause harm. Consequently, the motion for summary judgment on Plaintiff's excessive force claim against Defendants Jones and Totty in their individual capacities is due to be denied.

### D. Plaintiff's Request for Release

In addition to his request for monetary relief, Plaintiff also requests release from confinement as relief for the alleged excessive force. Doc. 1 at 4. Regardless of the merits of Plaintiff's claims, the Court is unable to grant this relief. Habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release. *Preiser v. Rodriguez*, 411 U.S. 475, 481 (1973). As Plaintiff's Complaint makes no challenge to the fact or length of his confinement but instead seeks release as a remedy for the alleged excessive force, the Court construes the Complaint as requesting relief only in the form of damages and notes that the proper vehicle for Plaintiff to obtain an earlier release would be through a habeas action.

## IV. CONCLUSION

Accordingly, the Magistrate Judge RECOMMENDS the following:

1. Defendants' Motion for Summary Judgment (Doc. 27) on Plaintiff's claims against Defendants Crow and Smith be GRANTED and the claims against these Defendants be dismissed with prejudice;

2. Defendants' Motion for Summary Judgment on Plaintiff's claims for monetary damages against Defendants Jones and Totty in their official capacities be GRANTED and these claims be DISMISSED with prejudice;

3. Defendants' Motion for Summary Judgment on Plaintiff's claim of excessive force against Defendants Jones and Totty in their individual capacities be DENIED; and

4. This case be referred back to the undersigned for an evidentiary hearing on Plaintiff's excessive force claims against Defendants Jones and Totty.

Further, it is ORDERED that by **May 24, 2022**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered by the Court. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by

the District Court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

    Done this 10th day of May, 2022.

                                        /s/ Kelly Fitzgerald Pate
                                        KELLY FITZGERALD PATE
                                        UNITED STATES MAGISTRATE JUDGE